# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED ARAB SHIPPING COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CV408-067<br>) |
| EAGLE SYSTEMS, INC. and CAROLINA CASUALTY INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendants. | ) |

## ORDER

On February 25, 2008, plaintiff, United Arab Shipping Company ("UASC"), filed a complaint against defendants for declaratory relief and damages in the Superior Court of Chatham County. (Doc. 1 at 2.) Defendants filed an answer demanding a jury trial and then removed the action to this Court. (Id. at 2-3; Doc. 2.) UASC has filed a motion to strike defendants' demand for a jury trial. (Doc. 6.) For the reasons that follow, UASC's motion is **DENIED**.

UASC avers that it is considered a "foreign state" under the Foreign Sovereign Immunities Act of 1976 ("FSIA").[1] 28 U.S.C. §§ 1330, 1603-1607. It argues that because the FSIA "does not allow jury trials in cases involving 'foreign states,' defendants' demand for a jury trial should be stricken." (Doc. 6 at 2.) Defendants contend, however, that UASC is not a foreign state under the FSIA. (Doc. 12 at 5.) Defendants further argue that that because the non-jury trial component of the FSIA only applies when an action has been brought *against* a foreign state, UASC could not rely on the Act even if it were a foreign state since it initiated this action as the complaining party. (Id. at 4.)

UASC is a treaty-created company jointly owned by Bahrain, Iraq, Kuwait, Qatar, Saudi Arabia, and the United Arab Emirates. (Doc. 6, Ex. A at 2.) As it is not itself a sovereign nation, it must

---

[1] The FSIA "was enacted to provide a comprehensive, uniform scheme of handling suits involving foreign states by delineating when actions can be maintained against such states and when those states are entitled to the protective aegis of restrictive immunity." First Nat'l Bank of Mobile v. Kaufman, 593 F. Supp. 1189, 1191 (N.D. Ala. 1984); 28 U.S.C. § 1330; 28 U.S.C. §§ 1603-1607; Powerex Corp. v. Reliant Energy Servs., Inc., 127 S. Ct. 2411, 2421 (2007); Permanent Mission of India to the United Nations v. City of New York, 127 S. Ct. 2352, 2358 (2007); Republic of Austria v. Altmann, 541 U.S. 677, 691 (2004); Argentine Republic v. Amerada Hess Shipping Co., 488 U.S. 428, 438 n.5 (1989).

qualify as a foreign state under 28 U.S.C. § 1603(b), which grants sovereign status to certain agencies or instrumentalities of foreign states. In order to qualify under § 1603(b), the entity must be: (1) "a separate legal person, corporation or otherwise;" (2) "an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof;" and (3) "neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country." Id. There is no dispute as to (b)(1) and (3). The only question is whether UASC's six foreign nations can pool their ownership interests to qualify the company as a foreign state under § 1603(b)(2).

The majority of courts that have addressed the issue have held that where a treaty-created foreign corporation is wholly owned by foreign governments, it qualifies as a foreign state under the FSIA, even if no single nation possesses a majority of the ownership interest. In re Air Crash Disaster Near Roselawn, Ind. On Oct. 31, 1994, 96 F.3d 932, 937-39 (7th Cir. 1996) (finding that

3

a company jointly owned by France and Italy qualified as a foreign state under the Act, even though neither country owned a majority of the company); LeDonne v. Gulf Air, Inc., 700 F. Supp. 1400, 1406 (E.D. Va. 1988) (finding that the argument that the FSIA does not apply unless a single foreign state has majority ownership to be "an unnecessary literalism that runs counter to the Act's purpose and ignores the well-established international practice of states acting jointly through treaty-created entities for public or sovereign purposes"); Ahmed v. United Airlines, Inc., 1998 WL 289294, at *2-3 (N.D. Cal. Apr. 21, 1998) (same); In re EAL Corp., 1994 WL 828320, at *4 (D. Del. Aug. 3, 1994) (finding that Eurocontrol, Europe's air traffic control agency, falls under the FSIA even though its ownership is pooled); but cf. Sea Transp. Contractors, Ltd. V. Indus. Chemiques du Senegal, 411 F. Supp. 2d 386, 392 (S.D.N.Y. 2006) (declining to permit pooling where foreign states only owned 65% of the company in question and where the company was created by a takeover rather than by treaty). Some courts have even been willing to apply the FSIA to pooled corporations that were not entirely owned by foreign states.

Aluminum Distrib., Inc. v. Gulf Aluminum Rolling Mill, Co., 1989 WL 64174, at *2 (N.D. Ill. June 8, 1989). On this reasoning, the Fifth Circuit explicitly held that UASC qualifies as a foreign state under the Act. Mangattu v. M/V Ibn Hayyan, 35 F.3d 205, 207-08 (5th Cir. 1994).

Defendant cites to United Arab Shipping Company v. Al-Hashim, 574 N.Y.S.2d 743 (N.Y. App. Div. 1991), which found that UASC does not qualify as a foreign state. (Doc. 12.) The state court found the pooling argument unpersuasive. Al-Hashim, 574 N.Y.S.2d at 743. Instead, it focused on the fact that the statute's language applies to entities owned by "a" foreign state, not "a company engaged in commercial activity for profit whose stock is held by at least six different nations." Id. In In re Hashim, 188 B.R. 633 (Bankr. D. Ariz. 1995), the court applied analogous reasoning to hold that pooling should not apply. Id. at 640-41. This Court is persuaded, however, that the view espoused in Mangattu, 35 F.3d 205, is the correct one. Al-Hashim and In re Hashim mechanistically applied the statute without considering the practical realities of international relations. As noted above, the

vast majority of courts that have addressed the issue have reached the same conclusion, finding that treaty-created companies owned jointly by several foreign nations qualify as foreign states. Consequently, the Court finds that UASC is a foreign state under the Act.

The designation of UASC as a foreign state does not end the inquiry, for defendants contend that the Act does not exempt a foreign state from a jury trial in all situations. When a U.S. citizen or state brings an action against a foreign state, it is well established that the plaintiff has no right to a jury trial. For instance, 28 U.S.C. § 1330 states that

> [t]he district courts shall have original jurisdiction without regard to amount in controversy of any *nonjury* civil action *against* a foreign state as defined in section 1603(a) . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity.

Id. (emphasis added). And 28 U.S.C. § 1441(d) similarly denies the right to a jury trial when a case against a foreign state is removed to federal court. But neither of those provisions applies in this case because UASC is the plaintiff in this action; that is, the action was not brought "against" UASC. (Doc. 1.) Instead, it was removed

under 28 U.S.C. § 1441(a), which permits removal of any civil action from a state court when the federal district court has original jurisdiction over the action. Original jurisdiction in this case arises under 28 U.S.C. § 1332(a)(4), which grants district courts jurisdiction over any claim brought by a foreign state against citizens of a State if the claim exceeds $75,000. (Doc. 1.) Nowhere in either statute is the right to a jury trial expressly disclaimed. See Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 474, 475 n.8 (9th Cir. 1991) (indicating that an American citizen defendant may have requested a jury trial in a § 1332(a)(4) case); see also First Nat. Bank of Mobile v. Kaufman, 593 F. Supp. 1189, 1191-93 (D.C. Ala. 1984) (distinguishing actions brought against a foreign state from actions brought *by* a foreign state and holding jury trials inappropriate in the former).

UASC cites to In re Oil Spill by the Amoco Cadiz, 1983 A.M.C. 947 (N.D. Ill. 1982), for the proposition that the spirit of the FSIA prevents the use of a jury in any case where a foreign state is a party. In that case, France sued Amoco for damages arising from an oil spill. Amoco counterclaimed for indemnification and

contribution. The court struck Amoco's jury demand, holding that the entire proceedings were subject to the FSIA. Id. at 947. But that case is clearly distinguishable, as the counterclaim put the foreign state in a defensive posture. Here, defendant has not counterclaimed against UASC, so the Court is not persuaded that the reasoning in that case is applicable on these facts. In addition, the Court is not convinced that the policy arguments underlying that decision are sound. In that case, the court stated that Congress intended for the FSIA to promote uniformity in decisions by barring jury trials in all cases involving foreign states and to provide similar protections to foreign governments as afforded the United States. Id. at 951-52. Although these broad statements may be true, at least in part, the Court is of the opinion that Congress understands how to define the jurisdiction of federal courts. Congress created § 1332(a)(4) in Section 3 of the FSIA in 1977. Charles Alan Wright et al., Federal Practice and Procedure § 3604 (2d ed. 2008) (the FSIA "added a new paragraph (4) to provide for diversity jurisdiction in actions brought by foreign states as plaintiffs"). Although the same act explicitly removed the

possibility of a jury trial in actions against foreign states, it did not do so for actions filed by a foreign state. The Court believes that the intent of Congress is clear: by filing suit as a plaintiff, a foreign state cedes certain protections granted under the FSIA.

For all of the reasons explained above, plaintiff's motion to strike defendant's demand for a jury trial is **DENIED**.

**SO ORDERED** this _2nd_ day of September, 2008.

/s/ **G.R. SMITH**
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**