```
                                                         FILED
                                                       ... COURT
    IN THE UNITED STATES DISTRICT COURT FOR             ... DIV.
      THE SOUTHERN DISTRICT OF GEORGIA        2009 SEP 23 PM 1:18
              SAVANNAH DIVISION
```

UNITED ARAB SHIPPING COMPANY, )
                                 )
    Plaintiff,                 )
                                 )
v.                                   )    CASE NO. CV408-067
                                 )
EAGLE SYSTEMS, INC. and       )
CAROLINA CASUALTY INSURANCE   )
CO.,                            )
                                 )
    Defendants.               )
                                 )

## O R D E R

Before the Court are the Parties' Motions for Summary Judgment. (Docs. 20, 22.) For the following reasons, the Motions are **DENIED**.[1]

### BACKGROUND

Plaintiff United Arab Shipping Company ("United Arab") engaged Defendant Eagle Systems, Inc. ("Eagle") to transport cargo from Savannah, Georgia to Birmingham, Alabama. (Doc. 20 at 1.) As contracted for, United Arab provided both the cargo container and chassis—the equipment—for the voyage. (Id.) Eagle, as the motor carrier, was responsible for transporting the equipment and cargo to Birmingham. (Id.) Unfortunately on March 2, 2007, soon after setting out from Savannah, Eagle's truck overturned, causing a fatality and

---

[1] After careful consideration, Defendants' Motion for Oral Hearing (Doc. 35) is **DENIED**.

extensive damage to United Arab's equipment and the cargo. (Id.)

With respect to the incident, United Arab and Eagle's rights and liabilities were governed by the Uniform Intermodal Interchange Agreement ("UIIA"), to which both were signatories. (Id. at 20.) The UIIA contains the following indemnity clause:

> [Eagle] agrees to defend, hold harmless and fully indemnify [United Arab] (without regard to whether [United Arab's] liability is vicarious, implied in law, or as a result of the fault or negligence of [United Arab]), against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage, including reasonable attorney fees and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit, or in enforcing subsection F.4 (collectively, the "Damages"), caused by or resulting from [Eagle's;] use or maintenance of the Equipment . . . .

(Id., Ex. A at 6.) As required by the UIIA, Eagle named United Arab as an additional insured on Eagle's existing commercial auto insurance policy. The policy was issued by Defendant Carolina Casualty Insurance Company ("Carolina Casualty"). (Id. at 2.)

Based on the serious nature of the incident, United Arab obtained legal counsel and quickly began its own investigation, incurring substantial attorney's fees and costs in the process. (Id.) According to Plaintiff, it

2

promptly tendered its indemnity and defense to Defendant Eagle, to which Defendant Eagle failed to respond. (Doc. 20 at 16.) Defendants deny receiving such a request, and allege that Plaintiff incurred these costs with the knowledge that Defendants were actively investigating the incident and resolving potential claims. (Doc. 25 at 14.) Ultimately, Defendants resolved all claims stemming from the incident. (Id. ¶¶ 12-14.)

Plaintiff filed the instant suit seeking indemnity for the costs generated when it initiated its own investigation. In its Motion for Summary Judgment, Plaintiff argues that the UIIA requires indemnification against all loss, which includes fees and costs generated conducting an independent investigation of the incident. (Doc. 20 at 8-12.) Defendant counters that the UIIA's indemnity provision is triggered by a refusal to pay or defend a claim, which did not occur in this case. (Doc. 22 at 9.)

**ANALYSIS**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is

to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from

it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

Under the agreement, Maryland state law governs the construction and interpretation of the UIIA. (Doc. 20, Ex. A at 8.) The Parties do not dispute this fact. (Doc. 20 at 13; Doc. 22 at 6.) Accordingly, the Court will apply Maryland law when interpreting the UIIA.

Maryland courts employ an objective theory of contract interpretation. Rhoads v. Sommer, 401 Md. 131, 151, 931 A.2d 508, 519-20 (2007). "When the language of a contract 'is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court.' " County Comm'rs for Carrol County v. Forty West Builders, Inc., 178 Md. App. 328, 377, 941 A.2d 1181, 1209

5

(2008) (quoting Wells v. Chevy Chase Bank, F.S.B., 363 Md. 232, 251, 768 A.2d 620, 630 (2001)). To determine if a contract is ambiguous, the Court must consider "the character of the contract, its purpose, and the facts and circumstance of the parties at the time of the execution." Maslow v. Vanguri, 168 Md. App. 298, 319, 896 A.2d 408, 420 (2006). Also, rather than attempting to determine a provision's meaning in isolation, the Court must look to the entirety of the contract when interpreting it. See Janusz v. Gilliam, 404 Md. 524, 540, 947 A.2d 560, 569 (2008), Fishbach v. Fishbach, 187 Md. App. 61, 99, 975 A.2d 333, 355 (2009). Finally, Maryland law interprets indemnity provisions "in the same manner as liability insurance policies." Mass Transit Admin. v. CSX Transp., Inc., 349 Md. 299, 311, 708 A.2d 298, 304 (1998).

Keeping these principles in mind, the Court concludes that the indemnity clause does not, per se, require Defendants to indemnify Plaintiff. The UIIA provision obliges Defendant Eagle to indemnify Plaintiff "against any and all claims, suits, loss, damage or liability, for bodily injury, death and/or property damage, including reasonable attorney fee and costs incurred in the defense against a claim or suit, or incurred because of the wrongful failure to defend against a claim or suit." (Doc. 20, Ex. A at 6.)

In the same section of the UIIA, the agreement requires that Defendant Eagle "shall promptly notify [United Arab] of any claim arising against [Eagle] . . . and shall also advise [United Arab] at that time of the legal defense undertaken regarding that claim." (Id.) In addition, the agreement provides that United Arab "shall not undertake any legal defense of or incur any legal expenses pertaining to the claim submitted to [Eagle], unless [Eagle] fails to timely do so." (Id.)

Reading these provisions together leads the Court to several conclusions. First, the provisions establish that Defendant Eagle was required to indemnify Plaintiff against losses that occur while Defendant Eagle was hauling the equipment. Second, the UIIA provides the means for indemnification—Defendant Eagle is obligated to either pay or defend against any claim for damages. This duty to either pay or defend results in Plaintiff being in the same position after an incident as it was before, fulfilling Defendant Eagle's obligation to indemnify Plaintiff. This is the obvious intent of the agreement. Therefore, Plaintiff's right to recover its investigation expenses depends on whether Defendant Eagle failed to either pay or defend the potential claims that resulted from the accident.

In <u>NYK Line v. P.B. Indus., Inc.</u>, 2004 WL 1629613 (S.D. Ind. April 20, 2004) (unpublished), the court determined that, under Maryland law, an insurer's duty to defend arises upon the occurrence of the incident, rather than when it was first notified.  <u>Id.</u> at *5, <u>see also</u> <u>Sherwood Brands, Inc. v. Hartford Accident & Indemnity Co.</u>, 347 Md. 32, 698 A.2d 1078 (1997).  Relying on <u>Sherwood Brands</u>, the court in <u>NYK Line</u> concluded that the motor carrier and its insurer were responsible for reasonable pre-notice expenses because, presumably, these would be the same expenses they would have incurred had they assumed the defense earlier.  <u>Id.</u> at *5-*6.  However, the court noted that if the motor carrier indicated that "it would be investigating and responding shortly or that it would accept the tender under a reservation," then the motor carrier would be able to expect the equipment provider not to "take immediate steps to investigate and prepare its defense."  <u>Id.</u> at *7.  This outcome would be consistent with the apparent intent of the UIIA, which was "to vest control of the defense in the motor carrier upon notification of an event that could trigger indemnity."  <u>Id.</u>

The Court finds this reasoning persuasive, but cannot resolve the case at this stage because there is a genuine issue of material fact.  That is, the Parties disagree

whether Defendant Eagle took control of the defense at such an early stage to warrant Plaintiff's independent investigation unwarranted. Plaintiff contends that it immediately tendered its indemnity and defense to Defendant Eagle. (Doc. 20 at 16.) Defendants counter that they never refused to indemnify Plaintiff, began investigating the incident on the day it occurred, and resolved all claims stemming from the incident. (Doc. 25 at 14.) Because the Court is unable to resolve this factual issue, the outcome of which is dispositive, the Court cannot grant summary judgment to either party. Accordingly, Plaintiff's and Defendants' Motions for Summary Judgment are **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court concludes that the presence of a genuine issue of material fact—whether Defendant Eagle timely took control of the defense—precludes it from granting summary judgment to either Party. Accordingly, Plaintiff's and Defendants' Motion for Summary Judgment are **DENIED**.

SO ORDERED this 23RD day of September, 2009.

                        WILLIAM T. MOORE, JR., CHIEF JUDGE
                        UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF GEORGIA